### CHRISTENSEN v. NATIONAL BRAKE & ELECTRIC CO.

District Court, E. D. Wisconsin. March 18, 1927.

Patents ⊜⟶318(1)—Accounting will be limited to infringing acts of manufacturing and selling patented device adjudged by decree, exclusive of contributing infringing use.

An accounting, under a decree adjudging defendant to have committed the infringing acts of manufacturing and selling the patented device, must be limited thereto, and may not embrace consideration and determination of any contribution to infringing use.

In Equity. Suit by Niels A. Christensen against the National Brake & Electric Company. On motion by defendant to quash summons issued by the master on accounting. Motion granted.

Lines, Spooner & Quarles, of Milwaukee, Wis., for plaintiff.

Brown, Boettcher & Dienner, of Chicago, Ill., for defendant.

GEIGER, District Judge. Upon the former hearing (10 F.[2d] 862) the court dealt with exceptions to the master's award of profits upon the manufacture and sale of repair parts, and plaintiff's position was stated in substance:

"When the making and sale of a large number of perfected devices—infringing devices—is established, and it further appears that during the infringing period large quantities of parts, which are not only duplications of parts of the perfected devices thus sold, but which were in truth sold for the purpose of repair, replacement, or retention as duplicates for emergencies, it is the duty of the court to treat such manufacture and sale of such parts, though not of themselves infringements, as contributions either to (1) the original infringing act of making and selling the completed device, or (2) as contributions to an infringing use (by some one) which must be assumed to have ensued the original infringing act of making and selling."

The view that the making and sale of replacement parts could be regarded as contributory to the original trespass in the making and selling of the completed devices was then rejected, and it was held that, if the act of making and selling repair parts in any event could be considered as a contribution to an infringing use, the burden rested upon the plaintiff to show the use of the completed compressors as constituting a subsisting act of infringement; that such burden could not be discharged upon the mere assumption that, as a matter of likelihood, a manufacture and sale of an infringing device ordinarily passed into an infringing use.

The defendant now restates its position upon the exceptions that were sustained, and presses a motion to quash a summons issued by the master, directed to elicit further data in support of a theory of contributory infringement, and broadly insists: (1) That the making and selling of repair parts is not and cannot be made an act of contributory infringement; (2) that, whether this be so, the decree in the present case deals with defined acts of infringement of making and selling the completed combined pump and motor, and it is not open to the plaintiff at this stage any further to develop a theory of contribution toward an infringing use.

It may be repetition of the former opinion, but the question now urged, and which impresses me as quite fundamental, must give full recognition to the possible ranges of "contributions" to infringement. But, in attempting broadly to define "contributory infringement," it is believed that these negative propositions must be accepted: I. That (1) making, (2) selling, or (3) using a device embodying a patented invention, without leave of the patentee, are entirely distinctive acts of invasion or trespass. II. That if there be infringement by manufacture, and if the manufacturer also sells, his act of manufacture is not, in a true sense, "contributory" to his act of selling. III. That while a manufacturer who sells, or his vendee who resells, may be guilty of a distinct act of infringement, neither thereby contributes, in a legal sense, to any future infringing acts of use.

In each of these cases the one infringer

may qualify or enable another to infringe; but he does not, by his own infringing act, produce, or help to produce, or take part in, the successor's infringing act. Therefore a seller of an infringing device completes his act of infringement by selling; his relationship with the device is then ended. And if the mere succession which is found in relationship or in the tradition of the device from the one as manufacturer or seller to the other as user (or reseller) does not make them joint infringers, it is difficult to see upon what theory the seller, by merely devolving upon the user a portion of the device, can in any sense be regarded as a contributor to, or participator in, an infringing use. The act amounts to nothing more than maintaining the initial qualification with which the user was endowed by the sale. To contribute structural ability, to establish, *for* use, is not participating *in* use; the latter is the infringing act. Selling to another qualifies him to sell; but it is not participation in his selling, if he sells, which is his infringing act. To sell, in whole or in part, qualifies the vendee to use, but it is not a participation in his use, if he uses.

The record before us, so it seems to me, must confine the accounting to the infringing acts which the decree adjudges were committed by the defendant; that is to say, manufacturing and selling the device covered by the plaintiff's patent. No infringing use has been comprehended, and therefore none could be considered, except (1) upon assumption, or (2) upon proofs, which, as against defendant, for the first time deal with and compel it to litigate that sort of infringement. Whatever consideration may be given to the broad proposition that the sale of replacement parts can in no event be treated as a contribution to an infringing use, the motion of the defendant may subordinate that proposition to the other, viz. that the liability of the defendant as an infringing user, either directly or contributorily, cannot now be brought into the case, and that the accounting cannot comprehend any advantage which the defendant may have derived in doing what alone is not an infringing act. I do not conceive that consideration of the meaning and just application of Birdsell v. Shaliol, 112 U. S. 485, 5 S. Ct. 244, 28 L. Ed. 768, can aid in the solution of the questions arising on the motion.

Whether the patentee's assertion of a claim for damages or profits, or both, against a manufacturer and seller, does or should discharge the patented device in the hands of a user; whether the user may still be proceeded against to restrain use or to recover from him the gain or profit accruing to him, or the alleged damage inflicted upon the patentee by continued use, notwithstanding the manufacturer's or the seller's full satisfaction of the patentee's right as against such manufacturer or seller, or whether the patentee, notwithstanding full satisfaction by either manufacturer, seller, or user of any claim for damage or profit, may still enjoin the use of the infringing device—these questions, howsoever much debated, are not, so it seems to me, comprehended within the proposition here. The decree in this case is limited as indicated, and upon an accounting does not comprehend the questions whether a manufacturer or seller contributed to infringing uses (never charged) or to reconstruction (an infringing act of making by another), by a sale of replacement parts after the infringing acts complained of and comprehended in the decree have ended.

Union Tool Co. v. Wilson, 259 U. S. 107, 42 S. Ct. 427, 66 L. Ed. 848, deals with a decree specifically enjoining the manufacture and sale, "not only of infringing machines, but also of parts or elements that might be used in combination to effect infringement," and it was there conceded that the defendant intended, unless otherwise ordered by the court, to continue to sell both the machines and the extra parts. The defendant sold parts and was charged thereby to have violated the injunction. There could be no suggestion that the issuance of the injunction had a jurisdictional infirmity, but the defendant sought to avoid contempt thus (see page 113 [42 S. Ct. 429]):

"On the merits the contention is this: The interlocutory decree awards to Wilson, among other things, compensation, by way of damages and profits, for employing the invention in any machine sold prior to the service of the injunction. A patentee, in demanding and receiving full compensation for the wrongful use of his invention in devices made and sold by a manufacturer, adopts the sales as though made by himself, and therefore necessarily licenses the use of the devices, and frees them from the monopoly of the patent. This license continues during the life of the machine; it does not end when repairs become necessary. Spare parts are needed for repairs. Those here in question were sold for use in, and repair of, machines marketed by the company before the service of the injunction. Therefore, it is argued, the sale of these parts is licensed and thus not a violation of the injunction. But to this argument, which prevailed in the District Court, there are sev-

eral answers, and among them this: It does not appear that Wilson has received any compensation whatever for the infringement by use of these machines. Compare Birdsell v. Shaliol, 112 U. S. 485, 487–489 [5 S. Ct. 244, 28 L. Ed. 768]. There was, consequently, no implied license to use the spare parts in these machines. As such use, unless licensed, clearly constituted an infringement, the sale of the spare parts to be so used violated the injunction. And the sale having been made with full knowledge of all relevant facts, the Circuit Court of Appeals properly held that, so far as Wilson had sought remedial, as distinguished from punitive, action, the District Court was not justified in purging the petitioner of contempt arising from the sale of spare parts."

The case therefore necessitated consideration and determination as an issue of infringement, or a part thereof, the very matter which the plaintiff here for the first time attempts to introduce upon an accounting hearing. And of course the defendant in that case was bound by the determination, and could not evade or violate the decretal injunction with a view of relitigating its merit in contempt proceedings. The fact of infringing use or of reconstruction were within the terms of the decree, and the case was not open to the defendant to complain, as the present defendant may, that it is called upon in the accounting proceedings for the first time to litigate the issue.

For these reasons, the motion of the defendant is granted upon the second ground hereinbefore indicated.